RENDERED: MARCH 24, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0463-MR

EDWARD BOWLES                                                                      APPELLANT

v.          APPEAL FROM CHRISTIAN CIRCUIT COURT
            HONORABLE ANDREW C. SELF, JUDGE
            ACTION NO. 94-CR-00438

COMMONWEALTH OF KENTUCKY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, EASTON, AND McNEILL, JUDGES.

McNEILL, JUDGE: Edward Bowles appeals from an order of the Christian

Circuit Court denying his motion for relief pursuant to Kentucky Rule of Civil

Procedure ("CR") 60.02. We affirm.

In 1996, a Christian County jury convicted Bowles of murder and sentenced him to life in prison. On direct appeal, the Kentucky Supreme Court summarized the facts thusly,

> [t]he murder victim was a woman by the name of Jackie Leavell. [Bowles'] brother, James Bowles, was a key Commonwealth witness and was Ms. Leavell's neighbor. According to the Commonwealth's evidence, Ms. Leavell, James Bowles, and [Bowles] "partied" at James' home on the night Ms. Leavell was murdered. They all smoked cocaine. Ms. Leavell offered sex in return for the cocaine the men were supplying. The three of them had sex. During the evening, however, things became contentious, and the partying turned into arguing. [Bowles] accused James and Ms. Leavell of stealing $100 from him. Although both denied taking the money, they promised to repay him as soon as possible. [Bowles] found a butcher knife and poked Ms. Leavell with it to scare her. The two began to struggle. James claimed to have left the house when the struggle moved into a different room. When James returned, Ms. Leavell was dead. James testified that he and [Bowles] loaded her body into a car and dumped it off Interstate 24 near Clarksville, Tennessee. Appellant did not testify at trial.

*Bowles v. Commonwealth*, No. 1996-SC-000940-MR at 1-2 (Ky. Apr. 16, 1998).[1]

Additional facts are germane to this appeal. First, James told police and also testified at trial that Bowles had admitted to "choking out" Ms. Leavell and bragging that he could "take somebody out" with his bare hands. Ms.

---

[1] The memorandum opinion of the Court is unpublished and, due to age, does not have a Westlaw citation. It is not being cited for persuasive or precedential value. As the facts were adjudicated long ago, we take judicial notice of the opinion of the Kentucky Supreme Court pursuant to Kentucky Rule of Evidence ("KRE") 201(b).

Leavell's body was discovered on the roadside in Tennessee several weeks after the murder took place. Her body was in a state of decomposition. A postmortem examination of her remains was conducted by Dr. Charles Harlan, who testified at trial. Dr. Harlan testified at the time he conducted the autopsy, he was the consulting forensic pathologist for Montgomery County, Tennessee, the medical examiner for Montgomery County, and the Chief Medical Examiner for Tennessee. Dr. Harlan testified that Ms. Leavell's death was due to asphyxiation, but due to decomposition of the body, he could not opine whether it was due to strangulation or suffocation. On cross-examination, defense counsel asked Dr. Harlan only if Ms. Leavell had alcohol and cocaine in her system and Dr. Harlan responded in the affirmative. Defense counsel did not question Dr. Harlan about any other findings in the report and did not call an expert in rebuttal. Dr. Harlan's autopsy report was not admitted into evidence at the trial.

Following affirmation of his conviction and sentence by the Kentucky Supreme Court, Bowles filed a motion pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42 alleging ineffective assistance of counsel. The trial court denied relief, but this Court reversed. However, the Kentucky Supreme Court granted discretionary review and reversed this Court, denying relief to Bowles. *Commonwealth v. Bowles*, 237 S.W.3d 137 (Ky. 2007).

In 2009, Bowles filed a motion to vacate his sentence pursuant to CR 60.02. The trial court denied relief, finding the motion was untimely. This Court affirmed. *Bowles v. Commonwealth*, No. 2009-CA-001207-MR, 2010 WL 2218674 (Ky. App. Jun. 4, 2010).

In 2019, Bowles filed the underlying motion pursuant to CR 60.02. He argued he was entitled to relief because, in 2005, Dr. Harlan's medical license was revoked by the Tennessee Board of Medical Examiners ("the Board"). The final order of the Board, contained in the record before us, contained numerous, often horrific, findings against Dr. Harlan related to postmortem examinations he performed, many of which were used in criminal prosecutions. Bowles alleged the Commonwealth committed a violation pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), which held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S. Ct. at 1196-97. Bowles argued investigations into Dr. Harlan began in approximately 1995, and this information was favorable to him, material, and withheld by the Commonwealth. In response, the Commonwealth asserted it was not in possession of information related to any disciplinary action against Dr. Harlan in Tennessee, favorable or unfavorable to Bowles.

-4-

The trial court held an evidentiary hearing. Bowles retained Dr. George Nichols, forensic pathologist and former Chief Medical Examiner in Kentucky, to testify regarding Dr. Harlan's autopsy report. Dr. Nichols testified that the cause of death (asphyxiation) was not substantiated by Dr. Harlan's findings contained in the report. Specifically, Dr. Nichols described the type of tissue damage/trauma expected in a case of strangulation or suffocation and no such findings were contained in Dr. Harlan's report. Dr. Nichols concluded that, based on the report, the cause of death should have been undetermined. He also testified that nothing in the report indicated a homicide occurred.

The trial court denied relief to Bowles, finding no evidence was presented to support Bowles' assertion the Commonwealth had knowledge of any disciplinary proceedings against Dr. Harlan in Tennessee (*i.e.*, there was no evidence of a *Brady* violation by the Commonwealth). The trial court also held that there was no reason to vacate Bowles' conviction because Dr. Nichols disagreed with the autopsy report, reasoning that Bowles had the opportunity to cross-examine Dr. Harlan at trial. Finally, the trial court found there was other substantial evidence introduced at trial in support of Bowles' guilt. This appeal followed.

The denial of a CR 60.02 motion is reviewed under an abuse of discretion standard. *Stoker v. Commonwealth*, 289 S.W.3d 592, 596 (Ky. App.

2009) (citations omitted). The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Further, because the trial court held an evidentiary hearing, this Court "is only entitled to set aside the trial court's findings if those findings are clearly erroneous, that is, when the findings are not supported by substantial evidence." *Commonwealth v. Crumes*, 630 S.W.3d 630, 648 (Ky. 2021) (citation omitted).

We begin by noting the Commonwealth urges us to affirm the trial court, in part, because Bowles' current CR 60.02 motion is successive and untimely. The Commonwealth is correct that Kentucky law is clear that a successive CR 60.02 motion is impermissible upon any ground that could have been raised in a prior CR 60.02 proceeding. *Stoker*, 289 S.W.3d at 597. Stated differently, "CR 60.02 does not permit successive post-judgment motions[.]" *Foley v. Commonwealth*, 425 S.W.3d 880, 884 (Ky. 2014). Bowles counters by arguing that (1) he brought the motion as soon as he became aware Dr. Harlan lost his medical license; and (2) the relief he seeks is extraordinary in nature because it relates to perjured testimony of an expert witness.[2] In its discretion, the trial court addressed Bowles' motion on the merits and did not make findings related to

---

[2] CR 60.02(f).

whether the CR 60.02 motion was timely or successive.  Accordingly, we also review Bowles' argument on the merits.

On appeal, Bowles all but abandons his original argument there was a *Brady* violation.  Rather, the theme throughout his brief is that Dr. Harlan's testimony at trial was perjured and/or fraudulent, and he is entitled to relief even though the alleged fraudulent nature was unbeknownst to the Commonwealth. Bowles asks this Court to *presume* the findings of the Board against Dr. Harlan, combined with Dr. Nichols' testimony disagreeing with the autopsy report, necessarily mean Dr. Harlan gave false testimony at trial.  We decline to do so.

In order to obtain relief for false testimony under CR 60.02, a defendant must "show both that a reasonable certainty exists as to the falsity of the testimony and that the conviction probably would not have resulted had the truth been known before he can be entitled to such relief."  *Commonwealth v. Spaulding*, 991 S.W.2d 651, 657 (Ky. 1999) (footnote omitted).

Bowles cannot demonstrate with reasonable certainty the falsity of Dr. Harlan's testimony at trial.  Bowles does not deny he had access to the autopsy report at the time of trial.  It is not new evidence.  Bowles had an opportunity to dispute Dr. Harlan's report *at the time*.  However, he did not call an expert witness in rebuttal and his cross-examination of Dr. Harlan was limited to just two questions.  It was clear that the defense's theory of the case was not to dispute the

cause of death, but rather to blame James for Ms. Leavell's murder. In fact, in closing arguments, defense counsel referred to Dr. Harlan's testimony to remind the jury that Dr. Harlan could not say *who* killed Ms. Leavell. Although Dr. Nichols later disagreed with Dr. Harlan's conclusion regarding the cause of death, Dr. Nichols' testimony does not automatically render Dr. Harlan's testimony false. Bowles submitted no evidence that demonstrated with reasonable certainty – or any certainty at all – that the testimony given at Bowles' trial was false.

We also agree with the trial court that there was substantial evidence of Bowles' guilt presented throughout the trial. James testified at length about the night of Ms. Leavell's murder, including his role in helping Bowles dispose of the body and Bowles' statements that he had "choked out" Ms. Leavell. Bowles' cross-examination of James was extensive and focused on his changing version of events on the night of the murder.[3] As a result, Bowles cannot demonstrate that, without Dr. Harlan's testimony, the trial would not have resulted in his conviction. We discern no error.

There is no question that the findings of the Board against Dr. Harlan were extremely disturbing. The final order detailed at least twenty-two cases in Tennessee containing "acts or omissions [that] would constitute unprofessional

---

[3] The jury is the "sole determiner of [witness] credibility." *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010).

conduct," and resulted in revocation of his medical license. However, there was simply no evidence that Dr. Harlan's testimony at Bowles' trial was fraudulent. Accordingly, the order of the Christian Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jacquelyn Bryant-Hayes
La Grange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Bryan D. Morrow
Assistant Attorney General
Frankfort, Kentucky